UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMRAJ MOHANSINGH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CROP PRODUCTION SERVICES, INC., a California Corporation; LUJAN CRUZ, an individual; and DOES 1 through 50,<br><br>Defendants. | No. 1:17-cv-00439-DAD-EPG<br><br><u>ORDER DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS, DENYING DEFENDANTS' MOTION TO SEVER, AND GRANTING PLAINTIFF'S MOTION TO REMAND</u><br><br>(Doc. Nos. 4, 6, 10) |

This matter is before the court on defendants' motion to dismiss (Doc. No. 4), defendants' motion to sever (Doc. No. 6), and plaintiff's motion to remand. (Doc. No. 10.) A hearing on the motions was held on June 6, 2016. Attorney John Migliazzo appeared on behalf of plaintiff. Attorney Cara Barrick appeared on behalf of defendants. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will deny defendants' motion to dismiss as having been rendered moot, deny defendants' motion to sever, and grant plaintiff's motion to remand.

**BACKGROUND**

On July 29, 2015, plaintiff, Ramraj Mohansingh, was hired by Calacro, the predecessor company to defendant Crop Production Services ("CPS"). (Doc. No. 1-1 at ¶ 8.) In his

1

complaint plaintiff alleges as follows. Throughout the course of plaintiff's employment, his supervisor, Tony, "made derogatory religious, cultural, ethnic, racial, and national-origin related comments" directed at plaintiff based on the perception that plaintiff was Muslim. (*Id.* at ¶¶ 11, 17.) Tony threatened to cut off plaintiff's finger. (*Id.* at ¶¶ 160, 171, 185.) Plaintiff's co-workers followed Tony's lead in this regard. (*Id.* at ¶¶ 12, 18.) In particular, defendant Lujan Cruz ("Cruz"), directed similar threats at plaintiff. (*Id.* at ¶¶ 160, 171, 185.) On February 16, 2016, Cruz threatened to cut off plaintiff's finger while displaying a knife. (*Id.* at ¶ 207.) Plaintiff complained to CPS management, but no steps were taken to protect him from Cruz. (*Id.* at ¶ 207.) Cruz again threatened plaintiff with a knife on February 17 and 18, 2016. (*Id.* at ¶¶ 203–204.) Plaintiff notified CPS management about these incidents as well and they indicated that they would investigate the matter. (*Id.* at ¶205.) However, CPS did not take any action and instead continued to allow Cruz to work in close proximity with plaintiff. (*Id.* at ¶ 207.) As a result of CPS' alleged failure to investigate, plaintiff reported these incidents to the Corcoran Police Department, whereupon Cruz was eventually arrested. (*Id.* at ¶ 24.) Plaintiff requested medical leave due to stress arising from the incidents related to Cruz, and upon his return to work, was immediately discharged by CPS. (*Id.* at ¶ 26.)[1]

Plaintiff originally filed his complaint in Kings County Superior Court on December 1, 2016. (*Id.* at 3, Ex. A.) He filed a first amended complaint on February 14, 2017. (*Id.* at 50, Ex. A.) Defendants timely removed this action to federal court on March 27, 2017. (Doc. No. 1.) Defendants maintain that complete diversity exists between the parties because plaintiff is a citizen of California and defendant CPS is a citizen of Colorado and Delaware. Defendants further contend that Cruz, a resident of California, "is a sham defendant who was fraudulently misjoined in an improper attempt to defeat diversity jurisdiction." (Doc. No. 15 at 8.) Defendants filed a motion to dismiss on April 3, 2017. Plaintiff filed his opposition to the motion to dismiss on May 2, 2017 (Doc. No. 12), and defendants filed their reply on May 30, 2017. (Doc. No. 17.) Defendants also filed a motion to sever defendant Cruz from the claims against

---

[1] Plaintiff asserts that the events described in his complaint were motivated by a discriminatory animus.

CPS on April 3, 2017. (Doc. No. 6.) The opposition and reply to this motion were filed on May 2, 2017 (Doc. No. 11) and May 30, 2017 (Doc. No. 18) respectively. In response to the motion to sever, plaintiff filed a motion to remand on April 26, 2017, arguing that the removal of the action to federal court was improper because complete diversity does not exist between the parties. (Doc. No. 10.) Defendants' opposition to the motion to remand was filed May 23, 2017 (Doc. No. 15) and plaintiff's reply was filed on May 30, 2017. (Doc. No. 16.) All three motions are currently pending before the court. Below, the court will first consider plaintiff's motion to remand since resolution of that motion will determine whether defendant's motion to sever and motion to dismiss need be addressed.

## LEGAL STANDARD

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Yocupico v. PAE Group, LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015). Thus, removal of a state action may be based on either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 552 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Jordan v. Nationstar Mortgage, LLC*, 781 F.3d 1178, 1181 (9th Cir. 2015). Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1141, *et seq.* These removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Geographic Expeditions, Inc. v. Estate of Lhokta*, 599 F.3d 1102, 1107 (9th Cir. 2010); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions*, 599 F.3d at 1106–07; *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus*, 980 F.2d at 566–67.

Diversity jurisdiction exists in actions between citizens of different states where the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332. Diversity of citizenship must be complete, and the presence "of a single plaintiff from the same

state as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

**DISCUSSION**

**A. Parties' Arguments**

As noted above, defendants removed this case to federal court "on the grounds that there is complete diversity of citizenship between plaintiff Ramraj Mohansingh [ ], a citizen of the state of California, and CPS, a citizen of the states of Delaware and Colorado; that Cruz, although a citizen of the state of California, is a 'sham defendant' . . . ." (Doc. No. 1 at 2.) Plaintiff's motion to remand is based on the contention that complete diversity does not exist between the parties. (Doc. No. 10 at 1.)[2] Furthermore, plaintiff asserts that defendant Cruz has been properly joined in this action because both Cruz and CPS are jointly and severally liable. (*Id.* at 2.) Finally, plaintiff argues that "the actions also arise out of the same transaction, occurrence, or series of transactions or occurrences; and many questions of law and fact common to all defendants will arise in this action." (*Id.*)

As a related matter, defendants' motion to sever is premised on three arguments: First, that plaintiffs have failed to satisfy Rule 20 concerning the joinder of parties because "[t]he FAC does not assert any right to relief against Cruz and CPS 'jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.'" (Doc. No. 6-1 at 6.) Second, defendants assert that "[t]he FAC's failure to satisfy Rule 20 demonstrates fraudulent misjoinder." (*Id.*) And finally, defendants contend that severance is proper in the interest of fundamental fairness and judicial efficiency. (*Id.* at 8.)

Plaintiff's opposition to defendants' motion to sever and plaintiff's motion to remand are both devoted in large part to arguing why the fraudulent misjoinder doctrine should not be applied. (Doc. Nos. 10-1 at 2–4; 11 at 2–3.) Accordingly, the court will address the fraudulent
/////

---

[2] Plaintiff does not contend that this case presents federal questions of law. (Doc. No. 10 at 1.)

4

misjoinder doctrine and its application here while discussing the parties' other contentions to the extent they are pertinent to plaintiff's motion to remand.

**B. Fraudulent Misjoinder**

Fraudulent misjoinder is a "logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court." *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004). The doctrine of fraudulent misjoinder was first set forth by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (finding that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action").[3] Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and then adds a claim involving a non-diverse party or resident defendant despite having no reasonable basis to join them because the claims are unrelated. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) (quoting Ronald A. Parsons Jr., *Should the Eighth Circuit Recognize Procedural Misjoinder?*, 53 S.D.L. Rev. 52, 57 (2008)).

The Ninth Circuit has not expressly adopted or rejected the doctrine of fraudulent misjoinder. *See California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001) (noting that the Ninth Circuit has yet to address the issue of fraudulent misjoinder, but "assum[ed] without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs"); *Tomlinson v. Deutsche Bank Nat'l Tr. Co.*, No. CV 13-00554, SOM-BMK, 2014 WL 346922, at *6 (D. Haw. Jan. 30, 2014), *report and recommendation adopted*, No. CV 13-00554 SOM-BMK, 2014 WL 607772 (D. Haw. Feb. 18, 2014) (noting that "[t]he Fifth, Eighth, Ninth, and Tenth Circuits have acknowledged its possible applicability, but have yet to expressly accept it or apply it in any case"). However, as plaintiff correctly notes (Doc. No. 10-1 at 13), the majority of district courts

---

[3] Fraudulent joinder is a related doctrine where "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The parties agree, however, that defendants are not relying on the doctrine of fraudulent joinder here. (Doc. Nos. 10-1 at 4; 15 at 10.)

within the Ninth Circuit have refused to adopt the doctrine. *See, e.g., J.T. Assocs., LLC v. Fairfield Dev., L.P.*, No. 15-CV-04913-BLF, 2016 WL 1252612, at *8–9 (N.D. Cal. Mar. 31, 2016); *Thee Sombrero, Inc. v. Murphy*, No. EDCV15001004VAPSPX, 2015 WL 4399631, at *4 (C.D. Cal. July 7, 2015) (noting that "[n]ot only has the Ninth Circuit declined to adopt the doctrine of fraudulent misjoinder, no court in the Central District of California that this court is aware of has adopted it, and 'district courts throughout the circuit have repeatedly and consistently declined to adopt the doctrine[.]'") (quoting *Jurin v. Transamerica Life Ins. Co.*, No. C 14-02882 LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014)); *Stone-Jusas v. Wal-Mart Stores, Inc.*, No. 2:14-CV-00669-JCM-NJ, 2014 WL 5341686, at *3 (D. Nev. Oct. 20, 2014) (noting that "the vast majority of district court decisions within the Ninth Circuit have refused to apply the doctrine"); *Target Const., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:14-CV-1004 JCM VCF, 2014 WL 5048241, at *3 (D. Nev. Oct. 9, 2014) ("Though some district courts have agreed with the Eleventh Circuit and adopted the *Tapscott* rule on procedural misjoinder, most have declined to follow the *Tapscott* rule."); *Jurin v. Transamerica Life Ins. Co.*, No. C-14-02882 LB, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014) ("Indeed, district courts throughout the circuit have repeatedly and consistently declined to adopt the doctrine."); *Early v. Northrop Grumman Corp.*, No. 2:13-CV-3130-ODW MRW, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013) (noting that while the Ninth Circuit has not expressly adopted the doctrine, "[d]istrict courts in the Ninth Circuit have gone further by rejecting the doctrine outright").

Likewise, judges of the Eastern District have generally rejected the doctrine of fraudulent misjoinder or found it to be inapplicable. *See, e.g.*, *Osborn v. Metro Life Ins. Co.*, 341 F. Supp. 2d 1123, 1128 (E.D. Cal. 2004) ("In sum, because there appears to be no reason to develop a fraudulent misjoinder theory, and because of the uncertainty as to how much such a theory should be applied, I respectfully decline to apply it."); *Dent v. Lopez*, No. 1:14-cv-00442-LJO-SMS, 2014 WL 3615784, at *6–7 (E.D. Cal. July 22, 2014) ("In cases factually similar to the instant cases, the great majority of judges in this circuit similarly conclude that the doctrine of fraudulent misjoinder is inapplicable, but assume, *arguendo*, its viability, only to further conclude that *Tapscott* is easily distinguishable on the facts.").

Defendants, cite one decision of this court recognizing and applying the doctrine, *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008). However, the court finds that case distinguishable from the one presented here.[4] In *Sutton*, the court applied the doctrine of fraudulent misjoinder and found severance of the defendants proper because, as plaintiffs conceded in that case, their "claims based on strict products liability against the removing defendants are *separate* from plaintiffs' claims of medical malpractice against the California defendants in implanting a previously recalled patch in plaintiff Sutton." 251 F.R.D. at 505 (emphasis added). Thus, it was clear that the plaintiffs' claims in *Sutton* against the resident defendants were based on a different theory of liability involving unique factual and legal issues. *Id.* By contrast, as discussed below, here there are overlapping issues of law and fact with respect to defendants CPS and Cruz.

Here, plaintiff raises eighteen causes of action in his complaint. (Doc. No. 1-1 at 78–81.) Plaintiff's eleventh, twelfth, and thirteenth cause of action are specifically related to defendant Cruz. The eleventh cause of action is for civil assault, while the twelfth and thirteenth causes of action are for a denial of civil rights with respect to defendant Cruz. Plaintiff's fourteenth and fifteenth causes of action similarly allege a denial of civil rights with respect to CPS. (*Id.* at 78–85.) Defendants argue that the vast majority of plaintiff's claims are against CPS and that the actions described mainly implicate plaintiff's supervisor, Tony. (Doc. No. 15 at 18.) However, even if defendants Cruz and CPS cannot be held jointly and severally liable, the facts alleged by plaintiff in his complaint giving rise to his claims against both defendants arise out of the same series of transactions or occurrences. According to those facts alleged, the harassment plaintiff experienced from Cruz's actions was instigated by Tony, who referred to plaintiff as a Muslim

---

[4] The court also finds *Tapscott* distinguishable as well. There, the court found that the resident defendants had "no real connection with the controversy" involving the diverse defendants. *Tapscott*, 77 F.3d at 1360. The court noted that "the alleged transactions involved in the 'automobile' class are wholly distinct from the alleged transactions involved in the 'merchant' class. The only similarity between the allegations in the 'automobile' class and the 'merchant' class are allegations of violations of Alabama Code §§ 5–19–1, 5–19–19, and 5–19–20." *Id.* Here, Cruz, the resident defendant, is connected to the controversy because he was plaintiff's co-worker and an employee of CPS, the diverse defendant. While the claims alleged against both defendants Cruz and CPS are substantially similar, they also arise from the same series of events, as explained above.

terrorist and threatened to cut off his finger. (Doc. No. 1-1 at ¶¶ 11, 17, 160, 171, 185.) Plaintiff alleges that his co-workers "followed Tony's lead and joined him, often in Tony's presence." (*Id.* at ¶¶ 12, 18.) Influenced by such behavior, defendant Cruz twice threatened to cut off plaintiff's finger, and in fact went a step further by actually displaying a knife both times. (*Id.* at ¶¶ 203–04, 207.) The allegations against Cruz and CPS involve similar issues of law and fact because plaintiff notified CPS management about these incidents, but no action was taken. (*Id.* at ¶¶ 27, 205–07.) Defendant Cruz continued to work on the premises with "unsupervised or poorly-supervised access to plaintiff." (*Id.* at ¶¶ 205–07.) Further, plaintiff alleges that he was terminated by CPS as a result of the complaints he made about the conduct of defendant Cruz. (Doc. No. 11 at 2.) Overall, the facts alleged in plaintiff's complaint concern issues pertaining to discrimination, harassment, and retaliation on the basis of perceived, race, national origin, and religion, committed by both defendants CPS and Cruz. These factual allegations are of such a nature that even if the court were to consider defendant's fraudulent joinder contention, remand would be proper here.

Despite the overlapping issues of law and fact with respect to defendants CPS and Cruz, the "better rule" is to grant plaintiff's motion to remand and have the state court decide the misjoinder issue. *See Osborne*, 341 F. Supp. 2d at 1127 (holding that the "better rule" is to "resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court");[5] *Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871–72 (N.D. Ohio 2008) ("[T]he better course of action is for the state court to rule on the propriety of joinder under the state's joinder law in the first instance. The state court is also then in a position to potentially address a motion to sever the parties and claims for further proceedings"); *In re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-CV-03610-FLW, 2014 WL 4954654, at *14 (D.N.J. Oct. 1, 2014) ("[T]he question of misjoinder remains in these

---

[5] The court in *Osborne* further noted that remand to the state court was appropriate because "application of *Tapscott* raises other difficulties," such as whether "a court should rely on Rule 20 of the Federal Rules of Civil Procedure or its state law counterpart." 341 F. Supp. 2d at 1127–28. As expressed in *Osborne*, the state court is in a better position to decide the issue, since the parties were allegedly misjoined in state court. *Id.* (citing *Jackson v. Truly*, 307 F. Supp. 2d 818, 824 (N.D. Miss. 2004)).

cases, but will be left to the sound judgment of the state court."); *see also Hanning v. Juarez*, No. 2:12-CV-02058-LDG, 2013 WL 7095748, at *6 (D. Nev. Aug. 27, 2013), *report and recommendation rejected*, No. 2:12-CV-2058-LDG-GWF, 2014 WL 294042 (D. Nev. Jan. 24, 2014; *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*, No. C-04-3615 RMW, 2005 WL 2216950, at *7 (N.D. Cal. July 25, 2005). Since this action was originally filed in Kings County Superior Court, that state court is in a better position to determine whether defendant Cruz has been misjoined. Should the state court find that the granting of severance is appropriate in this case, CPS may then remove the action back to federal court because complete diversity would then exist. Accordingly, the court will grant plaintiff's motion to remand and, therefore, need not address defendants' motion to sever and motion to dismiss.

## ATTORNEYS' FEES

Plaintiff requests attorneys' fees in conjunction with the motion to remand. (Doc. No. 10-1 at 7.) District courts are given discretion by statute to award such fees if the matter is remanded. 28 U.S.C. § 1447(c) ("An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (emphasis added). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Although the Ninth Circuit has not expressly decided the issue of fraudulent misjoinder and district courts within the circuit have declined to adopt it, because fraudulent misjoinder remains an unsettled area of law, the court does not find that defendants lacked an objectively reasonable basis for removal here. Plaintiff's request for attorneys' fees will therefore be denied.

## CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 4) is denied as moot;
2. Defendants' motion to sever (Doc. No. 6) is denied as moot;
3. Plaintiff's motion to remand (Doc. No. 10) is granted;

/////

9

4. This matter is remanded to Kings County Superior Court for all further proceedings; and

5. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: __**October 20, 2017**__   _____
UNITED STATES DISTRICT JUDGE